UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

Chambers of
**GEORGE L. RUSSELL, III**
United States District Judge

101 West Lombard Street
Baltimore, Maryland 21201
410-962-4055

December 16, 2019

MEMORANDUM TO COUNSEL RE:   Gina Carbaugh v. Aurora Health Management
Civil Action No. GLR-19-313

Dear Counsel:

Pending before the Court is Defendant Aurora Health Management's ("Aurora") Motion to Dismiss (ECF No. 13). The Motion is ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2018). For the reasons that follow, the Court will grant the Motion.

In July 2016, Plaintiff Gina Carbaugh began working as a geriatric nursing assistant and certified medical transcriptionist at Montevue Assisted Living ("Montevue"), a geriatric care facility located in Frederick, Maryland. (Compl. ¶¶ 6, 8, ECF No. 1).[1] Montevue is owned and operated by Defendant Aurora, a privately-owned healthcare company. (Id. ¶ 6, 10).

After starting work at Montevue, Carbaugh was diagnosed with pancreatitis and diabetes. (Id. ¶¶ 13, 18). These medical conditions interfere with Carbaugh's appetite and vision, cause fatigue, and affect major life activities, such as walking and normal function of the digestive system. (Id. ¶¶ 14, 19). At times, Carbaugh has been hospitalized overnight to treat her conditions, causing her to miss work. (Id. ¶¶ 12, 18).

After being hospitalized for approximately four days in December 2016, Carbaugh informed her supervisor Alice Leonard that she was being treated for her conditions and expected to return to work full-time "within a matter of weeks." (Id. ¶ 20). However, in early January 2017, Leonard called Carbaugh to inform her that her full-time employment would be terminated as a result of her recent "excessive absenteeism." (Id. ¶ 21). Leonard informed Carbaugh that she would be put on the "PRN" schedule and would be engaged to work on an as-needed basis. (Id. ¶ 22).

In April 2017, Carbaugh called out of work due to a pancreatitis flare-up that caused excessive vomiting. (Id. ¶ 28). When Carbaugh returned to work, she was subjected to comments from her co-workers and supervisors regarding her absences. (Id. ¶ 29). On April 19, 2017, Carbaugh took a break during a shift at work to consume food after her blood sugar levels dropped as a result of her diabetes. (Id. ¶ 31). While on break, Carbaugh was unable to respond to a patient call light.

---

[1] Unless otherwise noted, the Court describes facts taken from the Complaint and accepts them as true. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007)).

(Id.). No other employees answered the call light, even though other employees were available to do so and at least one employee was aware that Carbaugh was taking a break for health-related reasons. (Id. ¶¶ 31–32). Nonetheless, Carbaugh's supervisors admonished her for failing to answer the call and ordered Carbaugh "to hurry up and get back to work." (Id. ¶ 33).

After the April 19, 2017 incident, Carbaugh's supervisors at Montevue repeatedly refused her requests for more PRN hours and failed to speak with her about possible accommodations for her medical conditions. (Id. ¶¶ 35, 36). Ultimately, on December 7, 2017, Aurora categorized Carbaugh as fully terminated from her employment with the company. (Id. ¶ 38).

On February 1, 2019, Carbaugh filed a Complaint against Aurora and Montevue.[2] (ECF No. 1). The Complaint alleges violations of the Rehabilitation Act of 1973 as amended, 29 U.S.C. §§ 701 et seq. (2018) (Count I) and Title 20 of the State Government Article of the Maryland Annotated Code, Md. Code Ann., State Gov't §§ 20-601 et seq. (2018) (Count II). (Compl. ¶¶ 40–58). Carbaugh seeks monetary damages as well as injunctive and declaratory relief. (Id. ¶ 59).

On April 29, 2019, Aurora filed its Motion to Dismiss. (ECF No. 13). Carbaugh filed an Opposition on May 28, 2019. (ECF No. 24). Aurora filed a Reply on June 11, 2019. (ECF No. 27).

Defendant brings its Motion to Dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. The purpose of a Rule 12(b)(6) motion is to "test[] the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999)). A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. Goss v. Bank of Am., N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012)), aff'd sub nom. Goss v. Bank of Am., NA, 546 F.App'x 165 (4th Cir. 2013).

Aurora argues that the Complaint fails to state a Rehabilitation Act claim because Carbaugh does not allege that Aurora receives federal funding.[3] For her part, Carbaugh responds that Aurora receives federal financial assistance through Medicare and Medicaid payments it receives from its patients. The Court agrees with Aurora.

---

[2] The Court dismissed Montevue as a Defendant on August 14, 2019. (ECF No. 30).

[3] Because Carbaugh concedes the dismissal of her state law claim for failure to exhaust administrative remedies, (Pl.'s Mem. Opp'n Def.'s Mot. Dismiss at 1, ECF No. 24), the Court will dismiss Count II of the Complaint.

Section 504 of the Rehabilitation Act mandates that "no otherwise qualified individual with a disability . . . shall, solely by reason of her of his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity <u>receiving Federal financial assistance</u>." 29 U.S.C. § 794(a) (emphasis added). Here, Carbaugh's Complaint is devoid of any allegations that Aurora receives federal financial assistance. Indeed, the only allegation relating to Aurora's funding is that "Aurora is a private-owned healthcare company." (Compl. ¶ 6). The Complaint plainly fails to state a claim under the Rehabilitation Act.

Carbaugh argues for the first time in her Opposition that Aurora receives federal funding through Medicare and Medicaid payments from its patients. As a general matter, this Court has held that receipt of Medicare or Medicaid payments may constitute federal financial assistance for the purposes of the Rehabilitation Act. <u>See</u> <u>Dorer v. Quest Diagnostics Inc.</u>, 20 F.Supp.2d 898, 900 (D.Md. 1998) (permitting Rehabilitation Act claim to proceed where defendant received Medicare and Medicaid payments for providing laboratory services). However, a party is not permitted to amend his pleadings through a responsive filing. <u>See</u> <u>Zachair, Ltd. v. Driggs</u>, 965 F.Supp. 741, 748 n.4 (D.Md. 1997), <u>aff'd</u>, 141 F.3d 1162 (4th Cir. 1998). Because Carbaugh failed to properly plead that Aurora receives federal assistance through Medicare and Medicaid payments, Carbaugh's Rehabilitation Act claim must be dismissed.

For the foregoing reasons, Aurora's Motion to Dismiss (ECF No. 13) is GRANTED. Despite the informal nature of this Memorandum, it shall constitute an Order of this Court, and the Clerk is directed to docket it accordingly and CLOSE this case.

Very truly yours,

_____/s/_____
George L. Russell, III
United States District Judge